UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

—————

Fred Ward,

              Plaintiff,                     Case No. 2:14-cv-00240

v.                                       Hon. Timothy P. Greeley

Carolyn W. Colvin,
Commissioner of Social Security,

              Defendants.

_____/

## **OPINION**

        Plaintiff filed an application for disability insurance benefits under Title II of the

Social Security Act on July 7, 2010. *See* Transcript of Administrative Hearing at page 19

(hereinafter Tr. at ___). Plaintiff alleges that he became disabled on February 4, 2010,[1] due to

chronic cervalgia and shoulder pain, status-post multi-level anterior cervical diskectomy with

fusion; and obesity. Tr. at 21, 74. On November 2, 2010, Plaintiff's application was denied, and

upon reconsideration, was denied again on March 7, 2011. Tr. at 19. Plaintiff filed a written

request for an administrative hearing before an Administrative Law Judge (ALJ). *Id.* The ALJ

held a hearing on December 5, 2012. Tr. at 19, 35. At the hearing, Plaintiff was represented by

counsel. *Id.* Testifying at the hearing were Plaintiff and vocational expert Robert J. Verkins. Tr.

at 19, 32-104. In a decision issued on January 25, 2013, the ALJ denied Plaintiff's claim for

benefits. Tr. at 26. Plaintiff appealed the decision to the Appeals Council, which denied his

---

[1]Initially, Plaintiff alleged his onset date was November 6, 2007; however, at his hearing, Plaintiff amended the
date to February 4, 2010. Tr. at 58.

request for review on March 19, 2014.  Tr. at 1-6.  Plaintiff then filed this action on May 12, 2014.[2]

In 2007, Plaintiff injured his neck in a work accident, sustaining a cervical compression injury while working as a heavy equipment operator.  Tr. at 23.  In 2008, Plaintiff underwent a two level cervical diskectomy, arthrodesis, and fusion from C5 to C7, which was done by Dr. Frederick Harris.  Tr. at 402-403.  After the surgery, Plaintiff's neck pain continued, and he had complications with traditional medication.  Tr. at 23.  Consequently, in 2010, Dr. Timothy Morton began providing Plaintiff with regular Botox injections to his cervical spine, which effectively provided pain relief that allowed for improved functionality.  *Id.*  The pain relief from the injections allows Plaintiff to ambulate with normal gait, maintain normal balance, possess normal muscle tone, and possess strength in all of his extremities.  Tr. at 24.

Plaintiff suffers from chronic cervalgia and shoulder pain, status-post multi-level anterior cervical diskectomy with fusion; and obesity.  Tr. at 21.  Plaintiff has prior work experience operating heavy equipment, doing construction work, and repairing equipment (for example, he was a dump truck driver, a dredge operator, a bulldozer operator, a front-end loader, and a forklift operator).  Tr. at 42, 45, 95.  Plaintiff has not engaged in substantial gainful activity since 2007, despite attempts to obtain employment after receiving a restricted medical clearance. Tr. at 21, 41, 45.  At his hearing, Plaintiff testified that driving more than fifty to seventy-five miles at a time was painful, causing him to have to stop and walk around.  Tr. at 40-41.  In addition, Plaintiff testified that he avoids being around people because the pain causes him to be irritable; however, he has not sought mental health treatment.  Tr. at 91.  Finally, Plaintiff stated

---

[2] Both parties consented to proceed before a Magistrate Judge on July 17, 2014.  Docket # 11.

that he sleeps poorly due to pain, but later indicated that Flexeril has been prescribed to him and has helped him sleep better.  Tr. at 88-89.

Vocational expert Robert J. Verkins testified at the hearing that if Plaintiff was limited to sedentary work,[3] Plaintiff would not be able to perform his past jobs.  Tr. at 97. However, Verkins listed other job possibilities in Wisconsin for Plaintiff, including: Light Industrial Assembly (17,000), Production Inspector (3,500), and Machine Feeder (15,000).  *Id.* Verkins indicated that if Plaintiff was limited to sedentary work and occasional use of his hands and upper extremities (due to numbness), Plaintiff would not have any job possibilities available to him at the unskilled level.  Tr. at 98-100.

The ALJ determined Plaintiff suffers from chronic cervalgia and shoulder pain, status-post multi-level anterior cervical diskectomy with fusion, and obesity.  Tr. at 21.  The ALJ decided that Plaintiff could perform jobs that required lifting up to twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting for up to six hours of an eight hour work day; and occasionally climbing stairs, balancing, stooping, kneeling, crouching, and crawling.  Tr. at 22 (noting Plaintiff could not climb ladders, ropes, scaffolds, or perform overhead reaching or lifting bilaterally).  Based on these limitations, the ALJ concluded that Plaintiff was capable of performing light exertional work.  Tr. at 23.  The ALJ acknowledged that Plaintiff could not perform his past work, but he did conclude that Plaintiff could perform the

---

[3]Sedentary work here means Plaintiff is unable to: lift and carry more than ten pounds often, twenty pounds on occasion; change a lightbulb and other similar tasks; utilize ladders, scaffolds, and ropes; climb stairs, balance, stoop, kneel, crouch or crawl more than occasionally; concentrate or pay attention to details or do complex tasks.  Tr. at 97-98.

following types of light exertional, unskilled jobs in Wisconsin: Assembler (17,000), Production

Inspector (4,500), and Machine Feeder (15,000).  Tr. at 25-26.

Plaintiff filed an appeal on May 12, 2014, (Docket # 1), alleging that the ALJ's

residual functional capacity (RFC) determination was not supported by substantial evidence.  In

his motion for summary judgment[4], Plaintiff maintains that the ALJ made the following errors:

> I.  Contrary to the ALJ's decision, the evidence establishes that
>
> Plaintiff was not released to return to work without restrictions, but
>
> rather, has at all times since the amended onset date been subject to
>
> sedentary or light duty restrictions.
>
> II.  The ALJ failed to accord adequate weight to the opinions of Dr.
>
> Morton and Certified Nurse Practitioner (CNP) Annette Barker, and
>
> did not consider the various factors required by 20 C.F.R. § 404.1527,
>
> SSR 96-2p, and SSR 96-5p in his evaluation of these opinions.
>
> III.  The ALJ inappropriately discounted Plaintiff's testimony
>
> regarding symptoms and functional limitations.

Docket # 12.  Defendant Commissioner of Social Security filed a response on December 9, 2014.

Docket # 26. The matter is now ready for decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting

---

[4]While Motions for Summary Judgment are not typically the initial briefs considered by the Court, it has been accepted as an initial brief in this case for efficiency purposes.

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since November 6, 2007, years before the amended alleged onset date. Tr. at 21; *see* 20

C.F.R. § 404.1520(b).  At step two, the ALJ determined Plaintiff has chronic cervalgia and shoulder pain, status-post multi-level anterior cervical diskectomy with fusion, and obesity.  Tr. at 21; *see* 20 C.F.R. § 404.1520(c).  At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1; Tr. at 21.  At step four, the ALJ determined Plaintiff had the RFC to perform light work, as defined in 20 C.F.R.§ 404.1567(b), with the limitations of: lifting and carrying up to twenty pounds occasionally, ten pounds frequently; standing, walking, or sitting up for six hours of an eight hour day; climbing stairs, balancing, stooping, kneeling, crouching, and crawling occasionally; and not climbing ladders, scaffolds, ropes, or performing overhead reaching or lifting bilaterally.  Tr. at 22.  At step five, the ALJ determined there were jobs that existed in significant numbers in the regional and national economy that Plaintiff can perform.  Tr. at 25.  Therefore, the ALJ held that Plaintiff was not disabled during the time period from his alleged onset date through his date last insured. Tr. at 26.

Plaintiff alleges that, in determining his RFC, the ALJ improperly disregarded (1) Plaintiff's evidence that he was not released to work without restrictions, (2) Dr. Morton's and CNP Annette Barker's opinions, and (3) Plaintiff's testimony regarding his functional limitations.

Plaintiff believes that the central issue underlying the ALJ's denial was the ALJ's conclusion that "by August 2009, the claimant was 'released from rehabilitation services['] and given a 'full return to work, with no restrictions.'"  Pl.'s Br. at 7 (referencing Tr. at 23).

However, Plaintiff has erroneously concluded that this finding, alone, is the only evidence supporting the ALJ's RFC determination:

> In support of the above determined residual functional capacity assessment, the undersigned notes that the claimant's treatment record and pattern demonstrates that he gets and realizes significant pain relief from Botox injections.  Following his surgery in 2008, the claimant's neck pain resumed and after having complications with more traditional medication, the claimant began injection treatments to his cervical spine and the clinical notes verify that said treatments were particularly effective in providing pain relief and allowing a much improved functionality.   The claimant sought regular and continuing cervical spine injections and has consistently lauded the pain relief and improvement he experiences.   In 2010, he reported that the injections were "very effective" and "very helpful," lasting up to three months.   Between injection treatments, he takes over-the-counter medication and indicated that this was "working well." Flash forward to the spring/summer of 2012, the claimant stated that, overall, Botox "improves his quality of life dramatically."  Based on the clinical findings, there is substantial evidence to show that the claimant obtains significant pain relief and functional improvement from his chosen/delivered method of treatment, Botox.

Tr. at 23. The ALJ's decision outlining the basis for his RFC determination is thorough and complete.

       While Plaintiff properly pointed out that the ALJ erred in stating that Plaintiff was given a full return to work without restrictions since 2009, this error is harmless given the substantial amount of evidence in the record that supports the ALJ's RFC determination. *See Jones*, 336 F.3d at 477 ("Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). Moreover, it should be noted that the Plaintiff, himself, testified that he had no work restrictions imposed on him after 2010. Tr. at 43-44.

       Even though Plaintiff was not given a full return to work without restrictions, contrary to the ALJ's conclusion and Plaintiff's testimony, the ALJ relied on a substantial amount of other evidence in determining Plaintiff's RFC. Most notable is the fact that Plaintiff's disabling symptoms did not last for a period of up to twelve consecutive months as required under 20 C.F.R. § 404.1509. In addition, the ALJ considered the findings of Dr. Mina Khorshidi (the state agency reviewing physician). Tr. at 23-24; *see* 20 C.F.R. § 404.1527(e)(2)(I) (noting that state agency physicians are highly qualified and experts in social security, so the ALJ must consider their findings). Dr. Khorshidi's opinion noted that, as of November 2010, Plaintiff was able to lift and carry up to twenty pounds occasionally, ten pounds frequently; sit, stand, and walk around for up to six hours of an eight hour work day; and could occasionally lift above his shoulder level. Tr. at 536-43. In addition, Plaintiff began receiving Botox injections in 2010, which he indicated were "extremely effective," that "he continue[d] to benefit each time he has

-8-

the procedure," and "overall . . . Botox improves his quality of life dramatically."  Tr. at 549,

551, 675.  Moreover, evidence of Plaintiff's daily activities also supports the ALJ's RFC

findings.  "As a matter of law, an ALJ may consider household and social activities in evaluating

complaints of disabling pain." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231

(6th Cir. 1990); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997)

(noting that the ALJ may consider Plaintiff's household and social activities in evaluating

Plaintiff's pain or ailments).  For example, at his hearing, Plaintiff indicated that he could wash

dishes, vacuum, shop, cook simple meals, do stretches, go out to dinner, and drive up to seventy-

five miles.  Tr. at 23-24, 40, 59-61, 63.  Therefore, this objective medical evidence and testimony

support the ALJ's finding that Plaintiff has an RFC to perform light exertional work.

   Next, in support of his claim that the ALJ's RFC determination is incorrect,

Plaintiff asserts that the ALJ afforded insufficient weight to the opinions of his treating physician

Dr. Timothy Morton and CNP Annette Barker.  Under the Social Security Act, opinions of long-

term treating physicians are only given "great weight" when the opinions are supported by

"sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(c).  The ALJ afforded

little weight to Plaintiff's treating physician's evaluations for several reasons:

> Little weight is given to the opinion proffered by the claimant's
>
> treating physician Dr. Morton, M.D., as said opinion appears to be
>
> directly referencing the claimant's suitability to perform his previous
>
> form or type of work (Exhibit 4F. P. 6; 13F, p. 7; 15F, p. 4).  These
>
> opinions do not specifically state or detail his vocational or function-

by-function abilities, they simply state conclusory opinions, which
are not particularly useful in actually determining the claimant's full
vocational abilities and limitations.

Tr. at 24.  The ALJ provided a thorough and complete analysis for why he chose to afford little

weight to Dr. Morton's opinion.  *See Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756

F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is [ultimately] the prerogative of

the [Commissioner], not the treating physician.")); *Buxton v. Halter*, 246 F.3d 762, 763 (6th Cir.

2001) (noting that while treating physician's opinions may be entitled to great weight, the ALJ is

not bound by conclusory statements regarding whether a person is legally disabled, especially if

the ALJ's decision is reasoned); *see also* 20 C.F.R. § 404.1527(d)(1)-(2) (noting that no special

significance is given to medical opinions concluding a person is disabled, or opinions reserved to

the Commissioner, such as the nature and severity of a person's impairments).

Despite the above-mentioned authorities supporting the ALJ's decision to afford

Dr. Morton little weight, Plaintiff claims that the ALJ erred in failing to seek clarification from

Dr. Morton regarding any doubts he might have had about Dr. Morton's opinions.  Pl.'s Br. at

10; *see* SSR 96-5p (stating that if evidence does not support a treating doctor's opinion and the

ALJ cannot determine the basis of the opinion, ALJ *should* recontact the source for clarification).

Plaintiff is correct in that "it is the ALJ's duty to investigate the facts and develop the arguments

both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (citing

*Richardson v. Perales,* 402 U.S. 389, 400-01 (1971)).  However, when the evidence of record is

sufficient to determine disability, the ALJ is not required to recontact the treating physician.  *See*

*Jones*, 336 F.3d at 477 (noting that ALJ can discredit treating physician's opinion if not supported by objective medical evidence, and as long as ALJ provides reasons for rejection); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156 b.3 (6th Cir. 2009) (noting that it was permissible not to give controlling weight to claimant's treating physician when other medical evidence supported the ALJ's RFC decision).

Here, the evidence of record provided sufficient information to determine Plaintiff's RFC, thereby rejecting the need for the ALJ to recontact Dr. Morton, as described previously. For example, the ALJ considered the opinion of Dr. Khorshidi, the state agency physician. Tr. at 24; *see, e.g., Blakley*, 581 F.3d at 409 ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). In addition, the ALJ referenced Plaintiff's regular Botox injections as a reason for concluding that Plaintiff had the RFC to perform light work. Notably, that "the claimant stated that, overall, Botox 'improves his quality of life dramatically,' and 'the claimant's ability to ambulate and function in general is noticeably increased [from the injections].'" Tr. at 23-24. Overall, it is clear that there is substantial medical evidence in the record to conclude that Plaintiff had the RFC to perform light work. Tr. at 24-26. Consequently, the ALJ did not err in failing to recontact Dr. Morton, assuming the ALJ had any doubts as to the significance of any of Dr. Morton's opinions.

Similarly, Plaintiff briefly mentions that the ALJ should have afforded some weight, rather than none, to the findings of CNP Annette Barker in determining Plaintiff's RFC. Other than stating that the ALJ should have considered CNP Barker's opinions regarding the severity of his impairments, Plaintiff has not cited any mandatory authority for this Court to

follow.  Pl.'s Br. at 11-12 (noting Plaintiff cites only to a single Eighth Circuit case).  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 993-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

Despite Plaintiff's brief argument, this Court realizes that under 20 C.F.R. § 404.1513(d), a nurse practitioner's opinion may be considered and evaluated by the ALJ as "other sources" evidence:

> (d) Other sources. In addition to evidence from acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.  Other sources include, but are not limited to–
>
> > (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists); . . .
> >
> > (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

-12-

20 C.F.R. § 404.1513(d)(1), (4); *see Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541, 124 Soc. Sec. Rep. Serv. 12 (6th Cir. 2007) (noting that nurse practitioner's are considered other non-medical sources under 404.1513).

   Even if CNP Barker's opinion was explicitly considered in the ALJ's decision, it would not be entitled to the same weight as that given to the opinion of an acceptable medical source. *See Doornbos v. Comm'r of Soc. Sec.*, No. 1:13-CV-595, 2014 WL 4987807, *10 (W.D. Mich. Sept. 29, 2014). Moreover, upon review of the record, it is clear that CNP Barker works under Dr. Morton's supervision, and that both she and Dr. Morton have been treating Plaintiff since 2010. It comes as no surprise then that CNP Barker's opinions, at times, reference Dr. Morton's opinions.[5] *See* Tr. at 535. Accordingly, CNP Barker's opinion would have to be read in conjunction with Dr. Morton's opinions to create a full picture of her findings (indicating that her opinion read alone would not support a finding of disability). Thus, even if the ALJ explicitly considered CNP Barker's opinion in his decision, he likely would have afforded her opinion the same weight as that given to Dr. Morton—little weight. Thus, the inclusion of CNP Barker's opinion would not have affected the ALJ's determination of Plaintiff's RFC even if it had been included in the ALJ's decision. *Cruse*, 502 F.3d at 541 (noting the ALJ should evaluate the other sources evidence *when it might affect the outcome of the case*).

---

[5]For example, in one of CNP Barker's notes, she determined that Plaintiff still had neck and bilateral arm pain, status post anterior cervical diskectomy, and interbody fusion; and that Plaintiff was released to return to work on sedentary duty. Tr. at 386, 710. Similarly, Dr. Morton noted Plaintiff had muscular inflamation issues, concluding it would be treated with Botox injections; and that Plaintiff could go back to sedentary work. Tr. at 506.

Based on the aforementioned authorities, the Court finds no merit to Plaintiff's argument that the ALJ improperly discredited or avoided either Dr. Morton's or CNP Barker's evaluations of Plaintiff in determining Plaintiff's RFC.  Tr. at 24-26.

Plaintiff's final claim is that, in determining Plaintiff's RFC, the ALJ erred in finding Plaintiff was not credible.  When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person.  *Walters*, 127 F.3d at 531.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Id.* (citing *Villreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).  An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence.  *Id.*; *Winslow*, 566 Fed. App'x at 422.  For example, simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled.  *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)).  The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining Plaintiff's allegations of pain and disabling symptoms were not credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the medical records provided. The ALJ appropriately evaluated and considered Plaintiff's allegations of pain in his decision:

> The claimant contends that he is unable to work due to cervical pain that affects his shoulders and upper extremities and leads to headaches and difficulty sleeping (Exhibit 3E; 9E). He complains of muscle spasms and testified that he has limited endurance and trouble with overhead reaching and postural movements (Exhibit 4E; 6E). Further, he states that he no longer is able to enjoy hobbies and his normal leisure activities.

Tr. at 23. Despite Plaintiff's above-mentioned allegations, the ALJ determined that Plaintiff's testimony regarding his pain and disabling symptoms was not credible:

The claimant originally injured his neck in a work accident in 2007, sustaining a cervical compression injury working as a heavy equipment operator. He stopped working in November 2007, attempted conservative treatment and eventually underwent an anterior cervical multi-level diskectomy with fusion in May of 2008. He qualified for worker's compensation, participating in the statutor[ily] required rehabilitation and vocational training program and by August 2009, the claimant was "released from rehabilitation services["] and given a "full return to work, with no restrictions." Additionally, by December 2009, the claimant, still out of work, began collecting unemployment compensation benefits.

Concerning unemployment compensation benefits, it is noted that the claimant admits to representing himself as able to work and actively seeking employment during this relevant time period, as he so testified. Although the receipt of unemployment insurance benefits does not preclude the receipt of Social Security disability benefits, it is one of many factors that must be considered in determining whether the claimant is disabled (20 CFR 404.1512(b)). In fact, an application for unemployment benefits is evidence that the undersigned must consider together with all of the medical and other evidence. In this case, the claimant alleged that he has been disabled

-16-

since February 4, 2010, as amended at the hearing.  In order to receive unemployment compensation benefits, the claimant must present himself as ready, willing, able to work, and out looking for work, which he did, according to his testimony. The inconsistency between the information the claimant presented to the State Department of Labor and the information he has presented to the Social Security Administration undermines his essential allegations herein and lends support to the undersigned's assessment that the claimant possess the residual functional capacity to perform some forms of light exertional work.

In support of the above determined residual functional capacity assessment, the undersigned notes that claimant's treatment record and pattern demonstrates that he gets and realizes significant pain relief from Botox injections. Following his surgery in 2008, the claimant's neck pain resumed and after having complications with more traditional medication, the claimant began injection treatments to his cervical spine and the clinical notes verify that said treatments were particularly effective in providing pain relief and allowing a much improved functionality.  The claimant sought regular and continuing cervical spine injections and has consistently lauded the pain relief and improvement he experiences. In 2010, he reported that

-17-

the injections were "very effective" and "very helpful," lasting up to three months. Between [Botox] injection treatments, [Plaintiff] takes over-the-counter medication and indicated that this was "working well." Flash forward to the spring/summer of 2012, the claimant stated that, overall, Botox "improves his quality of life dramatically." Based on the clinical findings, there is substantial evidence to show that the claimant obtains significant pain relief and functional improvement from his chosen/delivered method of treatment, Botox.

Further, with regular Botox injections, the claimant's ability to ambulate and function in general is noticeably increased. He is observed to ambulate with a normal gait, maintain normal balance, possess normal muscle tone and strength in all extremities. Additionally, he demonstrates equal grip strength bilaterally and qual strength in his biceps and triceps. This functionality is also represented in his activities of daily living, which consists of abilities such as grooming, shopping, cooking simple meals, and barbeque grilling, going out to dinner, and driving.

Regarding driving, it is noted that driving an automobile for any distance requires sufficient concentration and mental skills to follow directions, read traffic signs, and avoid routine road hazards.

However, it also requires significant physical abilities such as bending, stooping, or crouching, sitting in one place for a period of time, turning the steering wheel, and maneuvering and turning one's body to see in all directions while simultaneously operating foot controls. Performance of actions and postural movements such as these erodes the credibility of the claimant's allegation of disability and supports the conclusion and residual functional capacity herein.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Tr. at 23-24.[6]  The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete.  The ALJ properly concluded that Plaintiff's allegations were inconsistent with the medical evidence.  *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating that ALJ found

---

[6]Notably, the parties concur that the ALJ erred in relying on the fact that Plaintiff received unemployment benefits for a time, specifically since Plaintiff had not received unemployment at any time after February 4, 2010 (the amended onset date).  Despite this error, the ALJ's overall decision in finding Plaintiff not credible is consistent with the evidence on record.  *Abbott v. Sullivan*, 905 F.2d 918, 926 n.6 (6th Cir. 1990) (noting that error is harmless when it does not affect the outcome of the case); *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("So long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal.").

claimant's alleged functional limitations not credible because it largely conflicted with credible, objective medical evidence).

Despite this thorough analysis, Plaintiff claims that the ALJ improperly relied on Plaintiff's ability to engage in daily activities when making his adverse credibility finding. However, an ALJ may consider an individual's ability to engage in daily activities in determining whether the individual's claims of pain are credible. *See Walters*, 127 F.3d at 531. Moreover, it is clear from the ALJ's written decision that his adverse credibility finding was supported by more than just Plaintiff's ability to do daily activities. *See* Tr. at 23-24. For example, the ALJ considered Dr. Khorshidi's opinion, which indicated that Plaintiff could carry and lift up to twenty pounds occasionally (ten pounds frequently), as well as stand and walk for up to six hours of an eight hour day. Tr. at 537. In addition, the ALJ considered the effects of Plaintiff's regular Botox injections on his pain and functionality. Tr. at 23-24 (noting that Plaintiff said the injections dramatically improve his pain, functionality, and overall quality of life). Finally, after considering the objective medical evidence, the ALJ considered Plaintiff's ability to engage in daily activities to determine that Plaintiff was not credible. Tr. at 23-24 (noting that Plaintiff testified that he can do daily chores such as grooming, stretching, driving up to seventy-five miles, going out to dinner, and shopping); *see, e.g., Walters*, 127 F.3d at 532 (finding claimant not credible when allegations did not match ability to run errands, walk two miles, prepare meals, and drive three times per week); *see also Blacha*, 927 F.2d at 231 (noting that ALJ can consider household and social activities in credibility findings, especially when inconsistent with alleged pain). Clearly, the ALJ based his adverse credibility finding on more than Plaintiff's ability to engage in daily activities. *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating that ALJ

found claimant's alleged functional limitations not credible because it largely conflicted with credible, objective medical evidence).

   Moreover, the ALJ's credibility determination is further supported by the numerous contradictory statements Plaintiff made at his hearing.  For example, Plaintiff testified that he does not have hobbies and cannot even watch movies because of the pain he feels from sitting in a small chair; however, earlier in the hearing, Plaintiff testified that he could do daily chores and drive several miles at a time.  Tr. at 24, 66-67.  In addition, Plaintiff testified that he has not been hospitalized, sent to the emergency room, or referred to a pain clinic despite allegedly being in a great deal of pain.  Tr. at 66-67.  Nonetheless, Plaintiff testified later in the hearing that he has received regular Botox injections from a pain clinic since 2010, which have helped relieve the pain in his muscles and increase his overall functionality.  Tr. at 64-65.  Based on all of the above-mentioned information, the ALJ's credibility determination is supported by the evidence on record.

   Overall, based on the aforementioned analyses, Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) is denied.  There is substantial evidence in the record that supports the Commissioner's decision that Plaintiff was not disabled as defined by the Social Security Administration.  In addition, Plaintiff has not provided new or previously unavailable evidence to support his claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing).  In fact, Plaintiff makes no argument that he has new and material evidence for the courts to consider on remand.  Instead, Plaintiff argues that his previously admitted evidence was improperly considered by the ALJ.  Consequently, this

Court concludes the Plaintiff has not met his burden to grant a reversal or remand in his case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

Accordingly, the decision of the Commissioner is **AFFIRMED** and Plaintiff's motion for summary judgment (Docket # 13) is **DENIED**.

Dated: August 10, 2015

/s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE